CHOCTAW, OKLAHOMA & GULF RAILROAD COM-
PANY ET AL. *v.* MACKEY, AS COUNTY
TREASURER OF HUGHES COUNTY, OKLA-
HOMA, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

No. 211.  Argued April 21, 1921.—Decided June 1, 1921.

1. The railroad right of way and station grounds here in question, now constituting, with the consent of Congress, parts of a through line of an extensive interstate system, are not exempt from state special tax assessments upon the ground that they are parts of a federal instrumentality, though originally granted by Congress with a purpose to develop coal lands of the Choctaw Nation, and though coal mines leased from the tribe are served by the railroad.  P. 535.

2. A special assessment for a street improvement, levied by a city under Oklahoma Comp. Laws, 1909, § 724, on railroad property abutting on the improved street and designated on a map prepared by the city engineer, *held* to have sufficiently identified the property. P. 537.

3. The removal of such map from the city files and its possession meanwhile by purchasers of the improvement bonds, did not invalidate the assessment, the railroad companies not having been injured or misled by its absence and having had full knowledge of the assessment proceedings and the improvement.  P. 538.

4. A railroad right of way and station grounds in Oklahoma, owned by a company in fee but subject to a right of reverter in the Creek Nation in case they cease to be used for railroad purposes, are liable to special assessment, under the Oklahoma laws, for a street improvement enhancing the value of the railroad use.  P. 538.

261 Fed. Rep. 342, affirmed.

THIS was a suit brought in the District Court by the present appellants to avoid and enjoin enforcement of a special street improvement tax.  The appeal is from a judgment of the Circuit Court of Appeals reversing a

judgment in their favor. _The facts are stated in the opinion, *post*, 534.

*Mr. C. O. Blake*, with whom *Mr. W. R. Bleakmore, Mr. R. A. Tolbert, Mr. Roy St. Lewis, Mr. Thomas P. Littlepage* and *Mr. Sidney F. Taliaferro* were on the brief, for appellants:

The purpose of the acts of Congress was not alone to provide transportation, but both acts have as their principal object the development of the coal lands belonging to the Indians, and to this end the purchasers of the property and franchises of the Coal Company were authorized to organize and become a federal corporation, with the rights, immunities, powers and duties of the Coal Company, which was primarily a mining company with the power to build, acquire, maintain and operate roads, ways and railroads necessary or useful in the operation of any mine or quarry owned or operated by the corporation. By these acts of the Government, accepted by the companies, the premises sought to be charged with the assessment were impressed with a duty in relation to the congressional purpose, which would be obstructed by the sale, apart from the franchise, of portions of the lands so devoted to such use. The appellants were more than ordinary common carriers, in that they were charged and entrusted with a duty to accomplish the operation of the mines identified in the acts of Congress, and to transport the products thereof, as well as the United States mail.

The nature and purpose of such grants as those made to the Coal Company and to the Choctaw Company and of the estate thereby conferred have been definitely settled by this court. *Chicago &c. Ry. Co.* v. *United States,* 217 U. S. 180; *Spokane & B. C. Ry. Co.* v. *Washington & Great Northern Ry. Co.,* 219 U. S. 166; *Northern Pacific Ry. Co.* v. *Townsend,* 190 U. S. 267.

This contention, that the way and grounds were not subject to assessment, is supported by the decision in *Choctaw, Oklahoma & Gulf R. R. Co.* v. *Harrison*, 235 U. S. 292.

It is true that the court was there speaking more with reference to the mining of the coal than the transportation thereof, but the mining and the transportation are inseparably connected and it was as much the duty of the Government to see that the avenues of transportation for which it, as guardian of the interest of the Indians, had appropriated a portion of their lands, were kept open and that the lands of the Indians which were taken for rights of way and station grounds were held intact, as it was to see that the coal mines were opened and operated.

At the time of the making of the grants to the Coal Company and its successor, the Choctaw Company, and of the authorization of the letting to the Rock Island Company, there was in effect in the United States a rule of property, arising out of the decision of this court in the case of *East Alabama Ry. Co.* v. *Doe*, 114 U. S. 340, that no part of the right of way of a railway line may be sold under process separate from the franchise under which it is held. .

There are numerous state decisions to the contrary, but they are in the minority and do not relate to congressional grants. It is fair to assume that Congress, in granting the way and grounds, incorporated as integral parts thereof the rule of property so disclosed by the highest court and generally accepted in the courts of the land. We do not think that this court has since shown any disposition to change the rule so established. *Nadeau* v. *Union Pacific R. R. Co.*, 253 U. S. 442; *Buncombe County Commissioners* v. *Tommey*, 115 U. S. 122.

It may be said that no intention should be imputed to Congress to empower or suffer the State or its municipalities to dismember the thoroughfare so secured, either

with or without the consent of private investment therein.
Congress was creating a public thoroughfare for all of
the general uses and for a specific use to which a special
interest of the Government and of the Indian nations
attached.

The grantee and its lessees and assigns, in fact all per-
sons, were forbidden to use the granted ways and grounds
for any other purposes.

The proceedings to make and enforce the assessment
were not such as to afford due process of law.

The state laws did not authorize the assessment.

*Mr. Jacob B. Furry,* with whom *Mr. Geo. S. Ramsey,*
*Mr. W. H. Harris, Mr. J. W. Harbaugh, Mr. W. T. Anglin*
and *Mr. Alfred Stevenson* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the
court.

This suit was brought in the United States District
Court for the Eastern District of Oklahoma by the
Chicago, Rock Island & Pacific Railway Company to
have declared void a special assessment for street improve-
ment made against part of its right of way and station
grounds in the City of Holdenville, Oklahoma, and to
enjoin the taking of any proceedings to enforce the same.
The Choctaw, Oklahoma & Gulf Railroad Company,
the lessor, was joined as plaintiff. The defendants are
the county treasurer, the city, and holders of bonds
issued to pay for the improvement. The street improved,
called Oklahoma Avenue, runs parallel to the main tracks.
The station grounds abut on the Avenue for a distance of
1641 feet, and the parcel assessed extends back from the
Avenue 150 feet to the centre of the right of way. Over
this street a large part of the traffic to and from the
station necessarily passes. For between it and the main

tracks lie the passenger depot, the freight houses, the express office, the cotton platform, an oil warehouse, grain elevators, coal bins and the team tracks. The assessment is assailed as invalid on several grounds. The chief contention is that the property is immune from assessment by the State because that part of the railroad was an instrumentality of the Federal Government. The other grounds of attack are that in laying the assessment the property was not sufficiently identified, and that the assessment of a railroad right of way and station grounds is not authorized by the law of the State. The District Court entered a decree for plaintiffs which was reversed by the Circuit Court of Appeals with directions to dismiss the bill. 261 Fed. Rep. 342. The case comes here under § 241 of the Judicial Code.

*First.* The claim of immunity from assessment rests upon these facts: The right of way and station grounds are on land which had belonged to the Creek Nation before the town (now city) was established under direction of the Secretary of the Interior, pursuant to the original Creek Agreement. Act of March 1, 1901, c. 676, § 10, 31 Stat. 861, 864. The Rock Island acquired its interest on March 24, 1904, under a lease from the Choctaw, Oklahoma & Gulf, for a period of 999 years, of all of its railroad property. The lessor company had in locating its railroad through Holdenville taken, besides the right of way 100 feet wide, an additional strip for station purposes 200 feet wide with a length of 3,000 feet; having acquired the power so to do by succeeding to the powers and franchises of the Choctaw Coal and Railway Company. To that company Congress had in 1888 granted the right to build a railroad in Indian Territory, with a branch line to coal mines leased from the Choctaw Nation.[1]

---

[1] Act of Congress, February 18, 1888, c. 13, 25 Stat. 35. Section 2, provides:

"That said corporation is authorized to take and use for all purposes

The contention is that the railroad is an instrumentality through which the Government undertook to perform its obligation to develop coal lands belonging to the Indians; and that, if the railroads' interest in the right of way and station grounds could be subjected to a special assessment and possible sale thereunder apart from the railroad franchises, the congressional purpose might be obstructed. *Choctaw, Oklahoma & Gulf R. R. Co.* v. *Harrison*, 235 U. S. 292; see also *Northern Pacific Ry. Co.* v. *Townsend*, 190 U. S. 267; *Indian Territory Illuminating Oil Co.* v. *Oklahoma*, 240 U. S. 522.

The mere fact that property is used, among others, by the United States as an instrument for effecting its purpose does not relieve it from state taxation. The most that can be said here is that among the public served by this railroad are some mines on land leased from the Choctaw Nation. The right of way and station grounds in question, instead of being as was perhaps originally contemplated by the Act of February 18, 1888, part of a branch to leased "coal veins," have become an integral

---

of railway, and for no other purpose, a right of way one hundred feet in width through said Indian Territory for said main line and branch of the Choctaw Coal and Railway Company; and to take and use a strip of land two hundred feet in width, with a length of three thousand feet, in addition to right of way, for stations, for every ten miles of road. . . .

"*Provided further*, That no part of the lands herein authorized to be taken shall be leased or sold by the company, and they shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railroad, telegraph, and telephone lines; and when any portion thereof shall cease to be so used, such portion shall revert to the nation or tribe of Indians from which the same shall be taken." ·

See also Acts of February 13, 1889, c. 152, 25 Stat. 668; October 1, 1890, c. 1252, 26 Stat. 640; February 21, 1891, c. 249, 26 Stat. 765; January 22, 1894, c. 14, 28 Stat. 27; August 24, 1894, c. 330, 28 Stat. 502; April 24, 1896, c. 122, 29 Stat. 98; March 28, 1900, c. 111, 31 Stat. 52.

part of through lines of a great railroad system.[1] Holdenville is on the main line of the Choctaw, Oklahoma and Gulf which extends from the west bank of the Mississippi River through Arkansas and Oklahoma to the Texas state line, a distance of nearly 650 miles. By the lease to the Rock Island, this railroad has become a part of the through lines of a much larger system. And even though it be granted that the Federal Government utilized the railroad as an instrument in working out its policy toward the Indians the tax upon the railroad property would be none the less valid. *Railroad Co.* v. *Peniston,* 18 Wall. 5, 36; *Western Union Telegraph Co.* v. *Massachusetts,* 125 U. S. 530, 546–548; *Central Pacific R. R. Co.* v. *California,* 162 U. S. 91, 125; *Thomas* v. *Gay,* 169 U. S. 264.

*Second.* Equally unfounded is the contention that the assessment did not sufficiently identify the property, and was hence a denial of due process of law. The Oklahoma statute under which the assessment was made (Comp. Laws, 1909, § 724), provides that:

"If any portion of the property abutting upon such improvement shall not be platted into lots and blocks, the mayor and council shall include such property in proper quarter block districts for the purpose of appraisement and assessment, as herein provided."

The railroad premises not having been platted, the Mayor and Council adopted a map of the city engineer, on which the right of way and station grounds were set forth in proper quarter block districts. The premises

---

[1] When Congress authorized the purchasers of the property and franchises of the insolvent Choctaw Coal and Railway Company to reorganize as the Choctaw, Oklahoma and Gulf, it conferred upon the latter "perpetual succession." Act of August 24, 1894, c. 330, § 5, 28 Stat. 502, 503. Later it greatly enlarged its powers, conferring authority without limit, to construct its railroad over any Indian reservation and to acquire and consolidate with practically any connecting line. Acts of April 24, 1896, c. 122, 29 Stat. 98; March 28, 1900, c. 111, 31 Stat. 52.

assessed were those quarter blocks thereon designated as abutting on that portion of Oklahoma Avenue which was improved; and the designation was clear. Some time after the passage of the ordinance providing for the assessment this map was inadvertently removed from the city files, sent to the purchasers of the bonds issued for the improvement, and not returned until after the lapse of a considerable time. But the railroad companies had full knowledge of the proceedings relating to the assessment and of the commencement, the progress and the completion of the improvement. There is not even a suggestion that they were injured or misled by the temporary absence of the map from the city files. Such removal did not invalidate the assessment. Furthermore, mere insufficiency of description or other irregularity in the proceeding would not entitle abutting landowners to the relief sought here. Their right would be limited to having the Mayor and Council make a reassessment conforming to the regulations prescribed by the statute. See Oklahoma Laws, 1907–8, p. 176, §§ 7–8; *Oklahoma Ry. Co.* v. *Severns Paving Co.*, 251 U. S. 104.

*Third.* The remaining contention is that the statutes of the State do not authorize assessment for betterments upon a railroad right of way and station grounds. The mere fact that there is a possible right of reverter in the Creek Nation does not preclude the railroad's interest from being subject to general taxation; see *Baltimore Shipbuilding Co.* v. *Baltimore*, 195 U. S. 375; *Maricopa & Phœnix R. R. Co.* v. *Arizona*, 156 U. S. 347, 352. The railroad's interest, as stated in *Rio Grande Western Ry. Co.* v. *Stringham*, 239 U. S. 44, 47, is "neither a mere easement, nor a fee simple absolute, but a limited fee, made on an implied condition of reverter in the event that the company ceases to use or retain the land for the purposes for which it is granted, and carries with it the incidents and remedies usually attending the fee." In

effect the railroad is the absolute owner of the land.  Its use is, and necessarily must be, exclusive.  The betterment for which the assessment was levied is of a nature to enhance the value of that use.  And it is the railroad, as distinguished from the Creek Nation, owner of a possible reversionary interest, to which the benefit from the improvement enures.  For the railroad's use will continue indefinitely, while the specific improvement to be paid for can have but a short life.

Street paving is a class of betterment to which the railroad right of way and station property is generally held to be subject.  See *Louisville & Nashville R. R. Co.* v. *Barber Asphalt Co.,* 197 U. S. 430; *Branson* v. *Bush,* 251 U. S. 182.  The rule appears to have been accepted in Oklahoma.  Compare *Missouri, Kansas & Texas Ry. Co.* v. *Tulsa,* 45 Oklahoma, 382; *Oklahoma Ry. Co.* v. *Severns Paving Co.,* 251 U. S. 104.  It is urged that, if the assessment is left unpaid, a sale to enforce the lien would sever an integral part of the railway.  The same objection might be urged against the validity of a lien for general taxes locally assessed upon railroad property or a mechanic's lien upon the same.  The objection is clearly unsound.  Compare *Kansas City Southern Ry. Co.* v. *Tansey,* 41 Oklahoma, 543; *Kansas City Southern Ry. Co.* v. *Rosier,* 38 Oklahoma, 231; *Kansas City Southern Ry. Co.* v. *Wallace,* 38 Oklahoma, 233.  If the validity of the assessment is established, it may be assumed that due payment will follow.  At all events we have no occasion to deal now with the method and means to be pursued in enforcing it.

*Affirmed.*