## CITY OF FLINT v. GRAND TRUNK WESTERN R. CO.
### No. 6312.

Circuit Court of Appeals, Sixth Circuit.
March 6, 1934.

Appeal from the District Court of the United States for the Eastern District of Michigan, Northern Division; Arthur J. Tuttle, Judge.

Bill in equity by the Grand Trunk Western Railroad Company against the City of Flint. From a decree for plaintiff [55 F. (2d) 384], defendant appeals.

F. G. Millard, of Flint, Mich., for appellant.

Gilbert W. Hand, of Bay City, Mich. (H. Victor Spike, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Bill in equity brought by Grand Trunk Western Railroad Company, appellee, against the city of Flint, Mich., appellant, to restrain appellant from entering upon and appropriating for street purposes certain property in the city of Flint claimed by appellee. The property is described as "that part of Harrison Street from the south line of the Grand Trunk right of way to Mill Street, also known as Water Street."

About 1870 appellee acquired ownership of the property abutting both sides of that part of Harrison street above described, and appellee's sole claim now is that in 1902 appellant abandoned the strip of ground in question, that it then ceased to be a part of the street, and by operation of law the title thereto reverted to appellee as the owner of the ultimate fee. In 1870 appellee built its railroad, locating its tracks over and through its property in the city of Flint and crossing Harrison street within the disputed strip. Its first depot was built east of Harrison street and south of its tracks, and was used until 1902. In that year it proposed to build a new depot at a point north of the tracks and just west of Harrison street. As a part of its facilities, a concrete loading platform about 18 inches high was to be constructed from Saginaw street on the west, along the tracks, over and across Harrison street to a point about 150 feet east, thus completely blocking Harrison street. To secure the right to construct this platform, appellee, on July 29, 1902, submitted to the mayor and common council of appellant the following petition: "Gentlemen: To enable us to properly locate the proposed new depot and grounds, to lay walks and build a platform for the accommodation of passengers in boarding and alighting from our trains, we find it will be necessary to build a stone platform across Harrison Street, and for this reason would petition your honorable body to vacate Harrison St. from the south line of the right-of-way of the Grand Trunk Western Railway to the south line of Mill or Water St. Yours truly, H. F. Dowker, Agent."

On receipt of this petition the council ordered the city attorney to prepare the necessary papers to vacate the street, and at a meeting on August 4, 1902, adopted two resolutions relative to the proposed vacation:

First. "Resolved that the council will take the necessary steps with all due dispatch to complete the vacating of the foot of Harrison St. upon condition that said company build a dock on the river above the dam and maintain the same with a stone walk from thence to the depot, also a wire fence between said walk and the tracks of said company from the dock to the depot platform."

Second. "Whereas, upon petition of the Grand Trunk Western Railway, it has been requested to vacate that portion of Harrison St. in the City of Flint between the south line of the right of way of said road North to the South line of Water St. in the second ward, City of Flint, Michigan, and

"Whereas as that portion of said Harrison St. is a dangerous public crossing on account of the numerous tracks of said railway crossing it at that point,

"Resolved, that the said portion of Harrison St. be vacated as a public street.

"And further, that written notices be posted in three public places in the City of Flint

for three weeks preceding the 15th day of September, 1902, at which time a meeting of the Common Council shall be held in the Common Council Chamber in the City of Flint for the purpose of treating with any person or persons liable to be affected by the vacation of said street, and for the purpose of hearing all persons in opposition thereto."

The minutes of the council of September 15, 1902, disclose that "on motion, the hearing on the matter of the closing of Harrison Street, was adjourned for two weeks." This was the last action taken by the council in regard to closing the street, but appellee proceeded at once to build its depot and adjacent platform upon the proposed location according to the original plan, with the exception that the depot proper now extended about two-thirds of the way into and across Harrison street. Appellee also erected a standpipe upon the ground, and otherwise occupied it and devoted it continuously to railroad uses until 1928; this without objection from the council or any property owner. The only substantial alteration in appellee's depot during this period was made about 1920, when a mail shed, extending farther into Harrison street, was attached to the east end of the building. During this entire period of twenty-six years the public neither used nor attempted to use the disputed territory for street purposes. Indeed, the nature of the obstructions made such use of it impossible, and no effort was made by appellant through its common council, nor by any citizen, to reopen the street or to reassert the easement therein. To the contrary, in 1921, the city of Flint, through its mayor, deemed it necessary to and did procure a license from appellee to construct one of its sewers through and under the disputed area.

In 1928 appellee removed its second depot and station platform from Harrison street and built a new one upon another location in the south end of the city. Soon thereafter appellant gave notice that it intended to reopen Harrison street across the strip in controversy without compensation to appellee; hence this suit.

Upon the facts presented we concur in the opinion of the District Judge that appellant in 1902 abandoned its easement in the property for street purposes; that the title of appellee, as abutting property owner, became free therefrom (see United States Gypsum Co. v. Christenson, 226 Mich. 347, 350, 197 N. W. 497), and that appellant cannot now reopen the street without compensating appellee therefor.

In Goodman v. Brenner, 219 Mich. 55, 61, 188 N. W. 377, 379, the Supreme Court of Michigan said: "Abandonment is largely a matter of intention. It consists of intention and nonuser. There must be coupled with the nonuser some clear and decisive act of the dominant owner, showing an intention to abandon and release his right." And such voluntary abandonment may be conclusively shown by the attending circumstances. Meyer v. Meldrum, 237 Mich. 318, 211 N. W. 658.

We do not decide that mere nonuser of the easement by appellant, or by the public, destroyed of itself the right thereto, for nonuser is only one element to be considered. In addition to nonuser for a period of more than twenty-six years there was undisputed occupancy by appellee, with appellant's consent, for the same period, permanent in its nature and wholly inconsistent with a claim of a right to use on behalf of appellant. Appellant, it is true, never built the dock, the stone wall, nor the wire fence required of it by the first resolution, but very probably all interested parties believed that the first resolution was superseded by the second, and that the latter was sufficient to effect the purpose thereof.

It is urged that the failure of the council to institute formal proceedings to bring to a finish the procedure authorized by it on July 29, 1902, negatives any purpose or intention on the part of the city to abandon the street. We cannot concur in this view because it is too obvious that the council and its successors by acquiescence, which we think amounted to direct approval, allowed appellee completely to close the street with obstructions permanent in nature.

Finally, we think the affirmative act of the city in 1920, by which it sought and accepted a license from appellee to construct and maintain the sewer across the property, is inconsistent with any other view than that adopted by the District Judge.

The decree awarding appropriate injunctive relief is affirmed.