**ZIRN et al.**

**v.**

**HANOVER BANK et al.**

**No. 259, Docket 23000.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1954.

Decided July 2, 1954.

Samuel Zirn, New York City, pro. per.

Nathaniel M. Sokolski, New York City, for Henry I. Cohen, Bondholder-Appellant.

Kelley, Drye, Newhall & Maginnes, New York City (Francis S. Bensel, Hovey C. Clark and Leland J. Markley, New York City, of counsel), for appellee, The Hanover Bank, as Trustee under the Equipment Trusts of 1945 and 1947.

Elbert N. Oakes, New York City, for appellee Ferdinand J. Sieghardt, as Trustee of New York, Ontario and Western Railway Company.

Before CHASE, Chief Judge, and FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

Appellants contend that Smith v. Hoboken R. R. Warehouse & S. S. Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 951, 90 L.Ed. 1123, is "decisive of this appeal." There the debtor railroad, in reorganization-bankruptcy under Section 77 of the Bankruptcy Act, was the lessee of a short-line railroad. The lease, executed long before the bankruptcy, provided, in effect, that the lessor had the power to terminate the lease and re-enter, if the lessee went into bankruptcy-reorganization. The lessor-owner applied to the bankruptcy court for permission to exercise this power, and that court made an order granting such permission. The Supreme Court held the order erroneous for the following reasons: (1) Under Section 77(b) of the Bankruptcy Act,[1] a plan of reorganization, which must be formulated by the Interstate Commerce Commission, can modify or alter the rights of creditors of the debtor-railroad and can cure or waive defaults of the debtor under a lease. Since forfeiture of the lease might render a reorganization plan impossible, the forfeiture required the approval of the Commission, and no such approval had been obtained. (2) Section 1(18) of the Interstate Commerce Act[2] provides that "no carrier by railroad * * * shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." "Discontinuance of operations by the trustee", said the Supreme Court, "is

---

1. 11 U.S.C.A. § 205(b).

2. 49 U.S.C.A. § 1(18).

abandonment of operations by a carrier within the meaning of § 1(18). And a certificate is required under § 1(18), whether the lessee or the lessor is abandoning operations." [3] Therefore, absent such a certificate, the order was improper.

■ We think the Smith decision inapposite here. In the first place, the provisions of Section 77(b) have no application to the orders now before us. For, by an amendment enacted in 1935, Congress added to Section 77(j) [4] this sentence: "The title of any owner, whether as trustee or otherwise, to rolling-stock equipment leased or conditionally sold to the debtor, and any right of such owner to take possession of such property in compliance with the provisions of any such lease or conditional sale contract, shall not be affected by the provisions of this section."

The legislative history shows that Congress, recognizing the substantial benefits to railroads which result from such equipment-agreements, desired to remove any possible doubt—stemming in part from Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110—as to the ability of owners of equipment trust certificates promptly, on default, to repossess the equipment, despite the pendency of bankruptcy-reorganization proceedings. See House Report No. 1283, 74th Cong., 1st Session, dated June 21, 1935, accompanying H.R. 8587, which reads in part (p. 4) as follows: "Under the present provisions of section 77, there is doubt whether the trustee under the typical equipment-trust agreement is entitled to the possession of the property insured by the terms of the agreements, it having been urged in some of the pending cases that, under the provisions of section 77, the equipment-trust arrangement must be treated as an ordinary mortgage. If this were done, the investors in the trusts would, consequently, be deprived of the preference intended to be preserved to them by the terms of the agreements, which in form and substance are generally in the nature of contracts of conditional sale. In view of the necessity of readily financing purchases of equipment at a time when the development of the transportation art is providing new forms of equipment, particularly in the passenger field, of which, in interests of efficiency and economy, the carriers should be able to avail themselves, and because after a depression the carriers are usually required to make large expenditures for equipment in order to accommodate the improved traffic, your committee is of the opinion that any doubt should be removed with reference to the validity of the equipment trust as a means of financing equipment purchases. Consequently H.R. 8507 carries an amendment in subsection (j) under which the title of any owner to equipment leased or conditionally sold to the debtor, and any right of such owner to take possession of such property, shall not be adversely affected by the provisions of the section." Senate Report No. 1336, 74th Cong., 1st Session, dated July 29, 1935, on S. 1634, which was the same as H.R. 8587, contained substantially the same language. In the light of these Reports, we think that the words "this section" in the amendment to § 77(j) refers to Section 77 as a whole and not merely to paragraph (j).

■ Moreover, significantly unlike the facts of the Smith case, here The Hanover Bank sought to enforce contracts executed, by the bankruptcy trustee, after the bankruptcy and by the express authority of the bankruptcy-reorganization court. Whether the Smith-case doctrine would govern the lease of a railroad line similarly executed, we need not now decide. But we think that doctrine can-

---

3. Section 77(o) of the Bankruptcy Act— 11 U.S.C.A. § 205(o)—authorizes the bankruptcy-trustee to sell or abandon lines or other property of the railroad "only with the approval and authorization of the Commission when required by the Interstate Commerce Act."

4. 11 U.S.C.A. § 205(j).

not apply to equipment-trust obligations which the bankruptcy court has authorized.[5]

 Nor, all else aside, is 49 U.S. C.A. § 1(18) relevant here. The district court's orders did not permit the railroad or the bankruptcy-trustee to abandon either any part of its "line" or any "operation." To "abandon" in this context means, we think, to give up permanently, not merely to suspend operations for lack of physical equipment. No Commission approval is necessary where the cessation of operations results, not from the volition of the railroad or its bankruptcy-trustee, but from the exercise of the supervening rights, here recognized by the Bankruptcy Act, of third persons. See, e. g., Town of Conway v. Atlantic Coast Line R. Co., 4 Cir., 20 F.2d 250, 259–260.[6] Especially in a case like this, if such approval were required before equipment-trust certificate-holders could recapture the equipment on default, the market for such certificates might well dry up, and accordingly railroad reorganization trustees might often be unable to procure needed equipment, with the consequence that suspension of operations would often be accelerated rather than avoided.[7]

Affirmed.

---

5. The foregoing discussion will serve to distinguish statements in the following cases cited by appellants: Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132; Palmer v. Commonwealth Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed. 93; Ecker v. Western Pacific R. Corporation, 318 U.S. 448, 63 S.Ct. 692, 87 L.Ed. 892; Gardner v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504; Thompson v. State of Louisiana, 8 Cir., 98 F.2d 108; Van Schaick v. McCarthy, 10 Cir., 116 F.2d 987.

6. There it was held that absence of I. C. C. approval constituted no defense in a proceeding by a town to compel a railroad to remove a segment of its track, thus severing its line.

Cf. Chamber of Commerce of Demopolis v. Southern Railway Company, 206 I.C.C. 70 (failure of railroad, for lack of funds, to replace a wrecked bridge not an illegal abandonment); Akron & B. B. R. Co., Abandonment of Operation, 239 I.C.C. 250, 254.

7. Although not the basis of our decision, we note the following in passing: (1) That the railroad is still operating goes to show that the orders did not authorize abandonment. (2) The bankruptcy-trustee stated that, if deprived of the diesel-electric locomotives, he can continue to operate by leasing steam locomotives.

We are not to be understood as indicating that, considering this railroad's prolonged grave financial condition and the failure to work out a reorganization plan, the court below should not soon direct the bankruptcy trustee to seek I.C.C. approval of abandonment of operation. Cf. Bankers Trust Co. v. Gebhart, 2 Cir., 195 F.2d 238, 240.