John J. McGRODY
and

International Organization of Masters, Mates and Pilots of America, by its Trustee ad litem, John Underhill

v.

BALTIMORE AND OHIO RAILROAD.

Civ. A. No. 33128.

United States District Court
E. D. Pennsylvania.

May 9, 1963.

Wilderman, Markowitz & Kirschner, Richard Kirschner, Philadelphia, Pa., for plaintiffs.

Sydney R. Prince, Jr., Baltimore, Md., John A. Shrader. Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

This is an action under § 1(20) of the Interstate Commerce Act, 49 U.S.C.A. § 1(20), to enjoin an alleged abandonment by defendant railroad of a river tugboat operation without having first obtained a certificate of public convenience and necessity to abandon, purportedly in violation of § 1(18) of the Act. Individual plaintiff was formerly employed by defendant as captain of its tug. Plaintiff

union is the collective bargaining representative of the individual plaintiff and executed a collective bargaining agreement with defendant on behalf of its members. Presently before me is a motion for preliminary injunction seeking to restrain defendant from abandoning its tugboat operation without authorization from the I.C.C. and to direct immediate resumption of the operation and reemployment of individual plaintiff as captain.

At preliminary hearing plaintiffs produced one witness, a union representative, who testified to the discontinuance of the operation, the layoff of the individual plaintiff, the attempts made by the union to secure reemployment by defendant of McGrody or severance pay under the provisions of the Railway Labor Act, and an unsuccessful attempt to bring this matter directly before the I.C.C. The I.C.C. in a report dated August 16, 1962, F.D. No. 21559, dismissed the complaint for lack of jurisdiction, holding that in the absence of an application for a certificate authorizing abandonment it had no jurisdiction to consider whether an abandonment should be authorized, and that only a competent court and not the Commission could enjoin a violation of § 1 (18).

Defendant filed certain affidavits relating to the facts of the operation and the circumstances of the discontinuance. These have not been disputed. They show that defendant operated a tugboat and carfloat for the delivery and collection of freight between piers along the Philadelphia area waterfront and defendant's tracks on Pier 62 South. Demand for this service declined until in late 1960, only two regular shippers were making use of defendant's floatage service. In November, 1960, and January, 1961, these two shippers transferred their operations to different locations which were served by all rail routes. During the two week period ending January 23, 1961, although the crew of the tug continued to report, there were no calls for service and on that date defend-

ant notified each of the crew members that their positions were abolished. Since that time there has only been one call for marine service, that on an export shipment to a pier which did not have a suitable apron track. Delivery was accomplished by transferring the cars to the Reading Railroad which handled the cars on its floatbridge. Thereafter, arrangements were made by defendant to perform such service pursuant to its tariffs through lease and charter of facilities, but to date no requests have been made for such service.

There being no dispute as to any of the above, they shall constitute my findings of fact. The real controversy between the parties is as to the legal significance of these facts and the legal standards governing the issuance of the requested injunction.

Section 1(18) proscribes the abandonment of "all or any portion of a line of railroad, or the operation thereof" without authorization from the Commission. Section 1(20) provides that any abandonment contrary to § 1(18) may be enjoined by any court of competent jurisdiction. The railroad here has never sought the Commission's approval of any abandonment, but contends firstly that its actions do not constitute an abandonment, and secondly that the operation is not "a line of railroad", but is like a switching operation which is exempted by § 1(22) from the terms of § 1(18). Plaintiffs, of course, take the opposite viewpoint on both of these matters. They argue that it is not my function to decide affirmatively either question, but rather that I must merely determine if *prima facie* a case has been made out and, if so, leave the matter to the Commission. This is a misconception of the respective functions of the courts and the Commission. It is for the courts to decide whether the action of the railroad is an abandonment subject to the Act. Upon a finding that it is, it is then for the Commission, upon application to it, to decide the public convenience and necessity of the abandonment, Powell v.

United States, 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643 (1937), although, of course, the Commission may have to pass on these questions initially if a petition is presented to it prior to action by the carrier, Long Island Rail Road Co. v. New York Central R. Co., 281 F.2d 379, 383–384 (C.A. 2, 1960).

■ I hold that plaintiffs here are entitled to no relief for the reason that the discontinuance of the tugboat operation is not an abandonment within the Act. The failure of the railroad to perform an operation for which there has been no demand does not of itself constitute an abandonment. Defendant's tariff for this operation is still in effect and it holds itself out to the public as ready to perform this service.

In Myers v. Arkansas & Ozarks Railway Corporation, 185 F.Supp. 36, at page 41 (W.D.Ark., 1960), the court said:

"To 'abandon' within the context of the statute means to give up permanently, not merely to suspend operations. No Commission approval is necessary where the cessation of operations results not from the volition of the railroad but as a result of conditions over which the railroad has no control. Zirn et al. v. Hanover Bank et al., 2 Cir., 1954, 215 F.2d 63, 69.

"In Williams v. Atlantic Coast Line R. Co., 4 Cir., 1927, 17 F.2d 17, the court, at page 22 of 17 F.2d, said:

" 'Abandonment involves more than mere nonuser. There must be an intention on the part of the company to abandon.' * * * "

Defendant has ceased operations, but has not abandoned the operation within the meaning of the statute.

With respect to the question whether the tugboat operation is a line of railroad or an exempted switching operation within § 1(22), I am unable, due to a lack of evidence, to determine the question at this stage of the proceedings. Section 1(22) provides that § 1(18) to (21) are inapplicable to the "abandonment of spur, industrial, team, switching, or side tracks, located * * * wholly within one State * * *."

Although the evidence shows that in the last days of the operation the only runs made were to and from piers on the Philadelphia side of the Delaware River, it also appears, although it is far from clear, that the operation at times also extended from Philadelphia to the Camden, New Jersey, side of the river, and therefore was obviously not "wholly within one State."

■ The purpose of § 1(22) is not to exempt industrial or switching operations as such from Commission regulation, but rather is to exempt local operations from their control.

In City of Yonkers v. United States, 320 U.S. 685, at page 690, 64 S.Ct. 327, at page 330, 88 L.Ed. 400 (1944), the Court said:

" * * * Underlying § 1(22) is a Congressional policy of reserving exclusively to the States control over that group of essentially local activities. * * * "

In the absence of sufficient evidence indicating whether we are dealing with an inter or intrastate operation, it is unnecessary to determine whether the operation is sufficiently like an industrial or switching track which would be exempted by § 1 (22) if intrastate. However, what I have said regarding the issue of abandonment is sufficient to dispose of the motion for preliminary injunction, and it will be denied.