In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re Application to Restrain from Legal Proceedings with Respect to NATIONAL RAIL PASSENGER CORPORATION.

Bankruptcy No. 70–347.

United States District Court,
E. D. Pennsylvania.

April 16, 1971.

———◆———

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for the Trustees of the Penn Central Transportation Company.

Herbert Smolen, Asst. City Sol., for City of Philadelphia.

Gordon P. MacDougall, Washington, D. C., for Commonwealth of Pennsylvania, National Ass'n of Railroad Passengers, United Transportation Union, and others.

Walter J. Myskowski, Washington, D. C., for Louis J. Lefkowitz, Atty. Gen. of New York.

Haffer, Goldstein & Meiser, by Andrew P. Goldstein, Washington, D. C., for National Association of Railroad Passengers.

Thomas P. Shearer, Pittsburgh, Pa., for United Transportation Union and City of Dayton, Ohio.

Larry Gesoff, Harrisburg, Pa., for Penn. Public Utility Commission.

Carl E. Van Dorn, Public Counselor Indianapolis, Ind., for the State of Ind.

## OPINION AND ORDER

FULLAM, District Judge.

Before going into reorganization under § 77 of the Bankruptcy Act on June 21, 1970, the Debtor had filed applications with the Interstate Commerce Commission for the discontinuance of various passenger trains. On September 22, 1970 (served September 30, 1970) the ICC entered an order at Finance Docket No. 26106, authorizing, inter alia, the discontinuance of 16 trains.[1] This or-

---

1. Trains Nos. 13, 32, 22, 23, 77, 78, 548, 549, 63, 64, 315 and 316, 14, 17, 351 and 52, between Buffalo, New York and Chicago, Illinois.

der was appealed to a statutory three-judge court in the Western District of Pennsylvania (Civil Actions Nos. 70–1156 and 70–1157). In those proceedings, a temporary restraining order was entered on September 30, 1970, later expanded into an interlocutory injunction, restraining the discontinuance of the 16 trains. The Trustees of the Debtor sought unsuccessfully to challenge the jurisdiction of the three-judge court, with respect to four of the trains running through Canada; and initially, for a brief period, attempted to assert that this Court, by reason of the reorganization proceedings, had exclusive jurisdiction.[2]

The Trustees appealed the decision of the three-judge court, insofar as it related to the four Canadian trains, to the Supreme Court of the United States.

On October 30, 1970, the Rail Passenger Service Act of 1970, P.L. 91–518, 45 U.S.C. § 501 et seq., was enacted into law. Section 802 of that statute reads as follows:

"Section 802. *Effect on pending proceedings.* Upon enactment of this Act, no railroad may discontinue any intercity rail passenger service whatsoever other than in accordance with the provisions of this chapter, notwithstanding the provisions of any other Act, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any Federal or State court, agency, or authority."

Accordingly, on February 22, 1971, the Supreme Court disposed of the pending appeal from the three-judge court interlocutory injunction as follows:

"Judgment vacated and case is remanded to the United States District Court for the Western District of Pennsylvania with instructions to vacate the interlocutory injunction appealed from because the injunction, together with the underlying cause, has become moot." Baker v. Pennsylvania, 401 U.S. 902, 91 S.Ct. 875, 27 L.Ed.2d 801.

Pursuant to the Supreme Court's mandate, the three-judge District Court, on March 25, 1971, entered the following order in each of the two cases:

"AND NOW, this 25th day of March, 1971, for the reasons heretofore set forth, it is ORDERED that the preliminary injunction heretofore entered be and the same is VACATED and the complaint be and the same is DISMISSED for mootness."

Meanwhile, on March 19, 1971, a group of 16 plaintiffs,[3] all of whom had been parties to one of the cases in the three-judge court, instituted a new action (Civil Action No. 71–282) in the United States District Court for the Western District of Pennsylvania, seeking a preliminary, and ultimately a final, injunction against the discontinuance of the 16 passenger trains which had been involved in the proceeding before the statutory court. The complaint alleges, on information and belief, that there is as yet no contract in effect between the Debtor and the National Rail Passenger Service Corporation ("Railpax"), and that discontinuance of these trains would be a violation of the National Rail Passenger Service Act of 1970, *supra.*

The Trustees thereupon filed in this Court a petition and obtained an order (No. 214) on the plaintiffs in this latest action to show cause why they should not be restrained from proceeding further with the new litigation unless and until they should seek, and obtain, leave of this Court to proceed with the suit. A hearing has been held, on April 15,

---

2. This contention was abandoned shortly after the Trustees entered the case.

3. Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Illinois Commerce Commission, Michigan Public Service Commission, Public of the State of Indiana, Public Utilities Commission of Ohio, State of New York, Cities of Pittsburgh, Philadelphia, Dayton, Cincinnati, Green Castle, Terre Haute, and Fort Wayne, National Association of Railroad Passengers and United Transportation Union.

1971, and extensive oral argument has been heard.

It is to be noted that the new litigation in the Western District, Civil Action No. 71-282, clearly is not, and does not purport to be, an appeal from any ICC order to a statutory court. Nor can it be viewed as an action for damages arising out of the operation of trains, within the meaning of § 77(j) of the Bankruptcy Act. It would seem reasonably certain, therefore, that the filing of this action is in contravention of Order No. 1 entered in these proceedings.

Since the respondents are, for the most part, governmental entities seeking only to protect a public interest, the technical violation of Order No. 1 will be disregarded and the "response" filed, and arguments advanced, on behalf of the respondents will be treated as either a request that Order No. 1 be interpreted as not prohibiting the litigation they have filed, or as a request pursuant to Order No. 1, for leave to proceed with it.

The real issues raised by the pending petition and response, are (1) whether this Court has the power to restrain the prosecution of the litigation in question, and (2) if so, whether that power should be exercised in this instance.

As to the first question, there can be no doubt. Section 77(j) of the Bankruptcy Act expressly confers upon a reorganization court the authority to stay pending suits and enjoin initiation of litigation; and it has been authoritatively determined that this power is in no way abridged by 28 U.S.C. § 959. Ex Parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934); Diners Club, Inc. v. Bumb, 421 F.2d 396 (9th Cir. 1970).

Needless to say, this does not involve a determination that the District Court for the Western District of Pennsylvania is without jurisdiction in the matter. That issue need not be considered; the jurisdiction of the latter court, and many other courts, may be assumed. The issue here is whether this Court, in the furtherance of the reorganization proceeding, should exercise its discretion by restraining the litigants from proceeding in some other forum.

The respondents are undoubtedly correct in their assertion that, ordinarily, matters relating to train discontinuances and the like are generally not heard by the reorganization court. Presumably, this is because, until enactment of the Railpax statute, such litigation consisted principally, if not entirely, of routine appeals from decisions of regulatory agencies. The normal processing of such matters by other courts and agencies is clearly contemplated under § 77(c) (2) of the Bankruptcy Act. Moreover, the volume of such litigation has usually been such as to pose no significant drain on the resources of a Debtor's legal department, nor has the outcome in each case been likely to have any profound effect upon the reorganization process.

In view of the Railpax statute, however, the present situation is quite different. This Court has pending before it the preliminary application of the Trustees for leave to enter into a Railpax contract and to borrow the money which will be required for the initiation payment under that statute. A hearing on that application is scheduled to be held on April 20, 1971. As this opinion is being written, crucial negotiations are in progress between the Trustees and the Railpax incorporators, and various other interested Federal agencies, seeking to establish the terms of the proposed contract. The views of the Trustees and the many other parties in interest in the reorganization proceeding, as to the desirability of "joining" Railpax, and the ultimate decision of this Court as to whether to approve such action, must necessarily involve a careful weighing of the advantages and disadvantages. It would be unthinkable, in my view, that this already complicated situation should be further complicated by the uncertainties of pending litigation in other courts. It now appears that a wide range of issues involving the implementation of the Railpax legislation will be coming to a

head within the next few weeks or months.

The Railpax statute contemplates that the public corporation thereby established will assume the operation of designated inter-city trains, and will compensate carriers for such operations pursuant to contract and that the contracting carriers will thereupon be permitted forthwith to terminate all other inter-city passenger trains. If the Debtor does not participate in Railpax, the statute requires that no inter-city passenger train now in service may be discontinued until 1975.

It is a matter of common knowledge that very many interested persons and governmental entities and agencies question the adequacy of inter-city rail passenger service proposed to be supplied by Railpax. It is not inconceivable that, if they were free to do so, large numbers of such persons, entities and groups might seek to litigate particular issues in a wide variety of forums. This would clearly hamper reorganization efforts, not only because of the burden of the litigation itself, but because of the prospect of inconsistent results.[4] It is apparent, therefore, that, at least for the present, this Court should retain control over litigation involving the impact of the National Rail Passenger Service Act of 1970 upon the Debtor.

In fairness to the respondents, it should be noted that the new litigation in the Western District was prompted by justifiable concern that the Debtor might attempt to discontinue the 16 trains in violation of the statute, on the basis of an erroneous interpretation of the Supreme Court's action; and that this concern may well have been exacerbated by some of the arguments advanced on behalf of the Trustees in the earlier litigation and elsewhere. However, by notices posted on or about March 30, 1971, as well as by statements at the hearing in this matter, the Trustees have made it clear that they have no intention of attempting to discontinue trains except in accordance with the Railpax statute. While it is probably unnecessary to do so, I have concluded that, for the reassurance of all parties involved, the position expressed by the Trustees in this regard should be incorporated in the order now to be entered.

### ORDER NO. 232

And now, this 16th day of April, 1971, it is ordered:

1. That the respondents named in Order No. 214 herein are severally enjoined and restrained from proceeding further with the action they have instituted in the United States District Court for the Western District of Pennsylvania, Civil Action No. 71–282, until further order of this Court; except that they may, if they so desire, cause the withdrawal and dismissal of said action.

2. That the said respondents, and all other persons, governmental entities (except the Federal government and the departments and agencies thereof), firms and corporations, having notice or knowledge of the entry of this order, are severally enjoined and restrained, until further order of this Court, from instituting or maintaining any litigation directly affecting the continuance or discontinuance of passenger trains covered by the National Rail Passenger Service Act of 1970, 45 U.S.C. § 501 et seq., in any court other than this Court, or without first obtaining leave of this Court to do so.

3. That the Trustees of the Debtor are directed to apply to this Court, on at least five (5) days' notice to the respondents and to all persons customarily notified in these proceedings, for leave to discontinue any inter-city passenger trains covered by said Act, before effectuating such discontinuance.

---

4. There is no implication here that this Court would be less likely to err than other tribunals, but merely that this Court's errors would be more likely to be consistent, and would be readily amenable to more consistent correction on appeal.