**COMMONWEALTH OF PENNSYL-VANIA et al.**

v.

**PENN CENTRAL TRANSPORTATION COMPANY et al.**

**COMMONWEALTH OF PENNSYLVA-NIA and Pennsylvania Public Utility Commission, Plaintiffs,**

and

**Cooperative Legislative Committee, Railroad Brotherhoods, State of Pennsylvania, Intervening Plaintiff,**

v.

**George P. BAKER et al., Defendants.**

**Civ. A. No. 72–427.**

United States District Court,
M. D. Pennsylvania.

Sept. 18, 1972.

J. Shane Creamer, Atty. Gen., Harrisburg, Pa., Gordon P. MacDougall, Sp. Asst. Atty. Gen., Washington, D. C., Philip P. Kalodner, Edward Munce, Alfred N. Lowenstein, John B. Wilson, Penna. Public Utility Commission, Harrisburg, Pa., for plaintiffs.

Thomas P. Shearer, Pittsburgh, Pa., for intervening plaintiff.

Geoffrey N. Zeh, Washington, D. C., for Railway Labor Executives Ass'n.

Carl Helmetag, Jr., Penn Central Transportation, Philadelphia, Pa., for defendants.

OPINION

MUIR, District Judge.

Tropical Storm Agnes struck Pennsylvania in late June, 1972, and created unprecedented floods and destruction. The damage was particularly severe in the Wilkes-Barre area.

This suit by the Commonwealth of Pennsylvania and its Public Utility Commission seeks a mandatory injunction to require the Penn Central Transportation Company to restore two of its lines which were badly damaged by the storm. The branches which are the subject of this suit are the so-called Wilkes-Barre branch between Sunbury and Wilkes-Barre and the so-called Northern Central branch between York, Pennsylvania and Cockeysville, Maryland. Since Tropical Storm Agnes, Penn Central has not operated any trains on these two branches. For the reasons stated below, Plaintiffs' application for an injunction will be denied.

The legal context of this action is found in two sections of the Interstate Commerce Act. Section 1(18) of the Act, 49 U.S.C. Section 1(18), provides in relevant part that a railroad shall not "abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment." Under Section 1(20) of

the Act, 49 U.S.C. Section 1(20), any abandonment contrary to the provisions of Section 1(18) "may be enjoined by any court of competent jurisdiction at the suit of . .. . any commission or regulating body of the State or States affected, or any party in interest".

On September 1, 1972, Penn Central filed an application with the Interstate Commerce Commission (ICC) to abandon these two lines. The ICC has not decided whether to grant this application, but it has ordered Penn Central to restore service on the Wilkes-Barre branch by October 21, 1972. This order may well be modified.

■ Penn Central's indefinite suspension of operation on these branches and its application for abandonment constitute abandonment of operations within the meaning of 49 U.S.C. Section 1(18). See Meyers v. Jay Street Connecting Railroad, 259 F.2d 532, 535 (2d Cir. 1958). Since the ICC has not sanctioned this abandonment, Penn Central's action is in violation of 49 U.S.C. Section 1(18), and this Court has the power to enjoin said violation. 49 U.S.C. Section 1(20).

■ This power to enjoin should not, however, be lightly or automatically exercised. I find nothing in the Interstate Commerce Act which indicates that where a line of a railroad is destroyed in whole or in part by a natural catastrophe, a Court should order restoration to commence immediately regardless of the damage to or importance of the line. See Myers v. Arkansas & Ozarks Railway Corporation, 185 F.Supp. 36 (W.D. Ark.1960); Smith v. United States, 211 F.Supp. 66 (D.Conn.1962); McGrody v. Baltimore and Ohio Railroad, 217 F. Supp. 252 (E.D.Pa.1963).

■ The test which this Court must apply is whether it is equitable to permit Penn Central to continue suspension of service until the ICC decides whether permanent abandonment is appropriate. The ICC has indicated that it will expedite consideration of the abandonment proceedings with respect to the two branches.

I have considered many factors in reaching my decision:

(1) The extent of the damage to the two branches.

(2) The economic importance of each of the two branches.

(3) The pendency of the application to the ICC for leave to abandon the branches.

(4) The order of the ICC to the railroad to restore service on the Wilkes-Barre branch.

(5) The order of the ICC to use a line parallel to the Wilkes-Barre branch on a test basis.

(6) The offer of the Delaware and Hudson Railroad to contribute $100,000 to the Penn Central towards the restoration of the Wilkes-Barre branch.

(7) The reorganization of the Penn Central under the supervision of Judge Fullam of the U. S. District Court for the Eastern District of Pennsylvania.

(8) The abandonment of these lines as a possible factor in the reorganization of Penn Central.

(9) The $19,000,000 damage to Penn Central's system by Tropical Storm Agnes.

(10) The extensive economic damage to Pennsylvania communities, particularly Wilkes-Barre, by Tropical Storm Agnes.

(11) The loss of jobs of railroad personnel in the Wilkes-Barre area.

(12) That prior to Tropical Storm Agnes, Penn Central had petitioned the reorganization court for leave to apply to the ICC to abandon the Northern Central branch.

I have given the greatest weight, as I believe I am required to do in these proceedings, to the first three factors.

The approximate cost to restore the Wilkes-Barre branch is $250,000 and to restore the Northern Central branch in its entirety is $400,000.

My assessment of the above factors leads me to conclude that it would not be equitable to require Penn Central to expend substantial funds to restore service temporarily on these two branches when all the elements, both short and long term, affecting such restoration will be given extensive consideration by the ICC. See Asbury v. Chesapeake & Ohio Railway Co., 264 F.Supp. 437 (D.D.C. 1967). The ICC has the expertise and broad perspective necessary to determine the feasibility of the permanent abandonment of railroad lines which this court lacks.

██ It is appropriate to add that, in my view, this suit should more properly have been brought by the Plaintiffs in the United States District Court for the Eastern District of Pennsylvania, the reorganization court, for two reasons. First, that Court is better able to evaluate Penn Central's needs and its ability to expend the sums required for restoration. Second, Order #1 of that Court in the reorganization matter prohibits this suit. See In re Penn Central Transportation Company, 329 F.Supp. 387 (E.D.Pa.1971); affirmed 446 F.2d 1109 (3d Cir. 1971); 28 U.S.C. Section 959(a). Since the reorganization court has at times specifically enjoined particular suits, but has not done so here, I felt that Order #1 was not an absolute bar to consideration of Plaintiffs' claims by this Court. See In re Penn Central Transportation Company, supra, at 1113. If I had been of the opinion that Plaintiffs should be granted relief, I would have required that Plaintiffs apply to the reorganization court nunc pro tunc for leave to bring this action and I would have made any injunction conditional upon Plaintiffs securing that approval.

Detailed findings of fact and conclusions of law are attached hereto and made a part hereof.

An appropriate order will be entered.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. FINDINGS OF FACT

1. Defendant Penn Central Transportation Company is a railroad corporation with multiple lines of railroad within the jurisdiction of this Court, and is subject to the provisions of Section 1(18, 20) of the Interstate Commerce Act, 49 U.S.C. Section 1(18, 20).

2. The Penn Central Transportation Company is in reorganization pursuant to Section 77 of the Bankruptcy Act and the judge having supervision thereof is the Honorable John P. Fullam, judge of the United States District Court for the Eastern District of Pennsylvania.

3. Penn Central Transportation Company owns a line of railroad between Wilkes-Barre and Sunbury, Pennsylvania, a distance of approximately 62 miles, known as the Wilkes-Barre branch.

4. The Wilkes-Barre branch connects with the north-south line of Penn Central, running between Harrisburg and Williamsport, Pennsylvania, at Sunbury, the latter point situated approximately 53 miles north of Harrisburg, Pennsylvania.

5. Penn Central formerly interchanged freight with the Delaware and Hudson Railway (D & H) and Lehigh Valley Railroad (LV) at the Buttonwood yard near Wilkes-Barre, Pennsylvania. For the year 1971, approximately 55,000 loaded cars were interchanged there between Penn Central and the Delaware and Hudson Railway.

6. Prior to Tropical Storm Agnes, which struck central Pennsylvania in late June, 1972, Penn Central operated on a normal day two trains in each direction between Enola Yard, near Harrisburg, and Wilkes-Barre. In addition, Penn Central operated one train daily in each direction between Conway Yard, near Pittsburgh, Pennsylvania, and Wilkes-Barre. Four yard crews worked at Wilkes-Barre daily, performing various tasks. A local freight operated dai-

ly Monday through Friday from Northumberland Yard.

7. Subsequent to Tropical Storm Agnes, Penn Central has not performed freight service over that portion of the Wilkes-Barre branch between S. Danville and Wilkes-Barre, a distance of 51.5 miles. S. Danville is situated approximately 11 miles east of Sunbury.

8. Approximately 91 employees were engaged in the operation of the Wilkes-Barre branch.

9. Defendant Penn Central operates under lease a line of railroad between York, Pennsylvania and Baltimore, Maryland, a distance of approximately 55 miles, known as the Northern Central Branch.

10. Prior to Tropical Storm Agnes, freight service on the line was provided by one (1) local freight operating westward between Mt. Vernon, Maryland and the State Line, and one (1) local freight operating eastward between York, Pennsylvania and the State Line.

11. Subsequent to Tropical Storm Agnes, Penn Central has not performed freight service over 37.8 miles extending between Cockeysville, Maryland (16.8 miles north of Baltimore) to Hyde, Pennsylvania (54.6 miles north of Baltimore). Within the portion out of service, the only interchange point is at New Freedom, Pennsylvania, with the Stewartstown Railroad Company, a short line railroad unaffiliated with Penn Central.

12. On June 14, 1972 the defendants petitioned Judge Fullam for leave to apply to the Interstate Commerce Commission for abandonment of the Northern Central Branch.

13. On August 23, 1972, the day after this suit was started, the defendants petitioned Judge Fullam for leave to apply to the Interstate Commerce Commission for abandonment of the Wilkes-Barre branch.

14. Defendant Penn Central Transportation Company, on September 1, 1972, filed an application with the Interstate Commerce Commission, pursuant to the provisions of Section 1(18, 20) of the Interstate Commerce Act, 49 U.S.C. Section 1(18, 20), for abandonment of the Wilkes-Barre branch between S. Danville and Wilkes-Barre, a distance of 51.5 miles, and the Northern Central branch between Cockeysville, Maryland and Hyde, Pennsylvania, a distance of 37.8 miles.

15. Penn Central has indefinitely suspended operation of the above portions of the Wilkes-Barre branch and the Northern Central branch.

16. The Interstate Commerce Commission has not issued a Certificate permitting the abandonment of any portion of either branch.

17. The cost of restoring the Wilkes-Barre branch to its condition before Tropical Storm Agnes is estimated by the plaintiffs to be $126,600 and is estimated by the defendants to be $275,000.

18. The cost of restoring the Wilkes-Barre branch is, in my view, approximately $250,000.

19. The cost of restoring the Northern Central branch to its condition before Tropical Storm Agnes between New Freedom, Pennsylvania, and Cockeysville, Maryland is estimated by the Plaintiffs to be $98,230.00 and from New Freedom, Pennsylvania to York, Pennsylvania is estimated by the Plaintiffs to be $187,550.00, or a total of $285,780.00.

20. The cost of restoring the Northern Central branch between New Freedom, Pennsylvania and Cockeysville, Maryland is estimated by Defendants to be $277,000 and from New Freedom, Pennsylvania to York, Pennsylvania, is estimated by the Defendants to be $221,000, or a total of $498,000.

21. The cost of restoring the Northern Central branch is, in my view, approximately $400,000, apportioned roughly 50% to each segment of the branch.

22. The Delaware and Hudson Railroad is willing to advance $100,000 to the Defendants for the repair of the Wilkes-Barre branch, without expectation of repayment by the Defendants.

23. Damage to the entire Penn Central system as a result of Tropical Storm Agnes was in excess of $19,000,000.

24. On August 31, 1972, the Interstate Commerce Commission by Service Order #1110 ordered the Defendants to restore service on the Wilkes-Barre branch on or before September 21, 1972.

25. Subsequently, the Interstate Commerce Commission extended time for restoration of service on said branch to October 21, 1972.

26. The Interstate Commerce Commission directed that beginning September 18, 1972 trains formerly interchanged between the Delaware and Hudson and Penn Central at Wilkes-Barre be carried by the Delaware and Hudson over the lines of the Erie Lackawanna Railroad between Wilkes-Barre and Northumberland, Pennsylvania and interchanged there with the Penn Central.

27. Should the experimental operation over the closely parallel Erie Lackawanna line just mentioned prove successful, the October 21 requirement by the Interstate Commerce Commission of restoration of service on the Wilkes-Barre branch may be subject to further modification.

28. The Interstate Commerce Commission has indicated that it would expedite the application by the defendants for leave to abandon the Wilkes-Barre branch.

29. By stipulation of the parties, the Lehigh Valley Railroad was dropped as a defendant.

30. The Defendants George P. Baker, Richard C. Bond, Jervis Langdon, Jr. and Willard Wirtz are trustees of Penn Central Transportation Company.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter.

2. Plaintiff Commonwealth of Pennsylvania is a party in interest, and Plaintiff Pennsylvania Public Utility Commission is a commission of a State directly affected by the abandonment, within the meaning of 49 U.S.C. Section 1(20).

3. Penn Central has abandoned operation of the Wilkes-Barre and Northern Central branches within the meaning of 49 U.S.C. Sections 1(18) and 1(20).

4. It is not equitable to require Penn Central Transportation Company to restore service on the Wilkes-Barre and Northern Central branches pending decision of the ICC on whether to permit abandonment.

5. Plaintiffs are not entitled to injunctive relief.